PARROSKI, Respondent, vs. GOLDBERG and others, Appellants.

*October 1 — October 20, 1891.*

*(1) Chattel mortgages: Failure to file: Purchaser with notice. (2) Evidence: Affidavit denying signature to written instrument. (3) Conversion: Damages. (4) Appeal: Bill of exceptions: Death of trial judge.*

1. Where a chattel mortgage is not filed in the proper town clerk's office, under secs. 2313, 2314, S. & B. Ann. Stats., it is void as against a purchaser from the mortgagor, even though he knew the property was mortgaged, that the mortgage debt was not paid, and that the mortgage was filed in another town.

2. Sec. 4192, R. S. (dispensing with proof of the signature to a written instrument until the person by whom it purports to be signed shall specifically deny the signature by oath or affidavit, etc.), applies to instruments executed by strangers as well as to those executed by parties to the action; and in either case the affidavit of denial may, in the discretion of the court, be filed at the trial.

3. In an action for the wrongful conversion of property the plaintiff may recover reasonable expenses incurred by him in attempting to find and retake it. *Collins v. Lowry,* 78 Wis. 329, distinguished.

4. Where the bill of exceptions is not certified to contain all the testimony, and it does not appear that there was a motion for a new trial, this court cannot review the testimony. And where, in such case, the trial judge has died since settling and signing the bill of exceptions, the defect is remediless.

APPEAL from the Circuit Court for *Shawano* County.

The action was brought to recover damages for the alleged unlawful taking and conversion of a span of horses. Special damages are also claimed for time and money expended by plaintiff in endeavoring to recover the horses after the same were so taken and converted. The defense is that the horses were the property of the defendant *Mrs. Goldberg*, and that the other defendants acted for her in obtaining possession of them.

The facts, stated most strongly for the defendants, are briefly these: *Mrs. Goldberg*, who formerly owned the horses, through an agent sold or traded them to one Kolonoski, who executed to her a chattel mortgage on them to secure the payment of $65. The mortgage was not filed in the town clerk's office of the town in which the mortgagor then resided, to wit, the town of Maple Grove, but was so filed in the clerk's office of the adjoining town of Angelica. Thereafter Kolonoski sold and delivered the horses to the plaintiff for a valuable consideration, paid by the plaintiff. Afterwards *Mrs. Goldberg*, by her agents, the defendants *Ben M. Goldberg* and *Graham*, took the horses from the possession of plaintiff, and advertised and sold them to satisfy the mortgage debt. *Mrs. Goldberg* was the purchaser at such sale. Plaintiff expended time and money in efforts to regain possession of the horses before he brought this action.

A trial of the action resulted in a verdict for plaintiff, assessing his damages at $200, for which sum judgment was rendered in his favor. The defendants appealed from the judgment. The case is further stated in the opinion.

*Benj. M. Goldberg*, for the appellants.

*M. J. Wallrich*, for the respondent.

LYON, J. The bill of exceptions is not certified to contain all the testimony, and it does not appear that there

was a motion for a new trial. Such being the condition of the record, we cannot review the testimony to determine whether it supports the verdict, or certain of the rulings of the court upon which error is assigned. *Ehlert v. Hollander*, 43 Wis. 251; *Kirch v. Davies*, 55 Wis. 287, and cases cited. All we can do is to review the rulings of the court on propositions of law, which are assigned for error and to which exceptions are preserved in the record.

1. After submitting to the jury the question whether the purchase of the horses by plaintiff was merely colorable, for the purpose of defrauding *Mrs. Goldberg*, or whether it was an actual purchase, the court instructed the jury that if it was an actual purchase their verdict should be for plaintiff, although he knew when he made the purchase that his vendor, Kolonoski, had mortgaged the horses to *Mrs. Goldberg*, that the mortgage debt was not paid, and that the mortgage was filed in the office of the town clerk of Angelica. There is no error in this instruction. Sec. 2313, S. & B. Ann. Stats., provides that "no mortgage of personal property shall be valid against any other person than the parties thereto, unless the possession of the mortgaged property be delivered to and retained by the mortgagee, or unless the mortgage, or a copy thereof, be filed as provided in the next section," etc. The next section, so far as applicable to this case, provides that the mortgage may be filed in the office of the clerk of the town, city, or village where the mortgagor resides. This case is within sec. 2313. The jury found that plaintiff purchased the horses of the mortgagor, and the statute renders the mortgage invalid as to the plaintiff, without regard to the question of notice. This is too plain for argument.

2. During the trial the court allowed plaintiff to interpose the affidavit of Kolonoski, denying the execution by him of the chattel mortgage in question. This ruling is claimed to be erroneous. Counsel for defendants admit

that the practice would have been regular under the decision in *Wallis v. White*, 58 Wis. 26, had Kolonoski been a party to the action. The statute under which this affidavit was received (R. S. sec. 4192) makes no such distinction. The affidavit must be made by the person by whom the instrument purports to have been executed, and it is immaterial whether such person is or is not a party to the action.

3. Testimony on behalf of plaintiff was admitted, under objection, showing the amount of expenses incurred by plaintiff in endeavoring to recover the horses after they were taken from him by defendants. The court instructed the jury that they might award, as damages, the reasonable and necessary expenses incurred by plaintiff in searching for and trying to recover his horses.

The general rule of damages in actions of trover undoubtedly is the value of the property at the time of the wrongful conversion thereof, and interest thereon from that time; or, at the option of plaintiff, the price for which the defendant has sold the property, and interest thereon from date of sale; or, if defendant still has the property, its value at the time of trial, in the form in which it was converted. *Ingram v. Rankin*, 47 Wis. 406. That case, and indeed all the authorities, recognize the rule that, under some circumstances, special damages may be recovered, over and above the value of the property, in actions of trover. Thus, in the case just cited it was said by the late Mr. Justice TAYLOR that special damages might be recovered in trover " if the plaintiff is deprived of some special use of the property anticipated by the wrong-doer." He cites to this proposition Sedg. Dam. (6th ed.), p. 591. The question of special damages, however, is not involved in that case, and the subject is only referred to by way of argument and illustration. But the grounds for recovering special damages in such actions is not limited to some special use of the property. It is laid down in Sedg. Dam. (8th ed.), § 216, that

the plaintiff may recover the reasonable expense of attempting to find and retake property of which he has been wrongfully deprived. Many cases are cited to this proposition. The rule goes upon the ground that one whose property has been tortiously taken from him shall not be compelled, in the first instance, to resort to an action of trover to recover its value, thus surrendering his property to the wrong-doer, but may employ all reasonable means, and incur reasonable expenses, to recover the property itself, and thus avoid the consequences of the unlawful act of the wrong-doer. It is entirely equitable that such expenses should be recoverable in the action of trover, if the owner of the property has been driven to that action to obtain redress. It is said in Sutherland on Damages (p. 240) that damages in trover are assessed on equitable principles. A person who has taken the property of another tortiously must expect that the owner will endeavor to recover it before he resorts to an action for damages for its conversion, and that in so doing he will or may incur expenses. To refuse the owner the right to recover his reasonable expenditures thus incurred would be to send him out of court without full redress for the wrong he has suffered. This would be inequitable and unjust.

In *Collins v. Lowry*, 78 Wis. 329, there is some language in the opinion which it may be thought asserts a rule not in harmony with that above stated. What is there said had reference only to that particular case. All the case decides is that the plaintiff therein, having voluntarily accepted a return of property pending an action to recover damages for the wrongful conversion thereof, cannot recover in such action special damages for expenses incurred in obtaining such return.

We conclude that testimony of the expenses incurred in trying to find and recover the horses was properly admitted, and that the court laid down the correct rule of law on that subject.

4. The court sustained an objection to the following questions, propounded by counsel for the defendants to a witness called by them: "Did you have any conversation at that time with Kolonoski with reference to the execution of this note and mortgage?" The time referred to is when the horses were sold under the chattel mortgage. Counsel stated he proposed to prove by the witness that Kolonoski admitted to him that he executed the mortgage and note. The testimony is only competent to impeach that of Kolonoski, who denied the execution of the mortgage, and no foundation was laid for its admission by interrogating Kolonoski as to such alleged conversation. Moreover, it is immaterial whether he executed the securities or not. In either case they are invalid, as against the plaintiff.

5. Defendants attempted to prove the contents of a certain letter (the letter having been lost) purporting to have been written by plaintiff, in which it is claimed plaintiff admitted that Kolonoski executed the mortgage in question. The testimony was rejected. For the reason last above stated, the ruling is immaterial and could not work any possible injury to the defendants. Were it admitted of record that Kolonoski executed the mortgage, defendants would be in no better or worse position than they would be were it a verity in the case that his name signed thereto is a forgery.

6. It is believed that all other errors assigned require a review of the testimony in order to determine whether the rulings upon which they are predicated were erroneous or otherwise. For example, one of these alleged errors is that the court improperly admitted expert testimony of the value of the horses in controversy, when the testimony failed to show that the witnesses were competent experts; another is that the court stated to the jury that the testimony on the part of plaintiff tended to prove the market

value of the horses to be from $175 to $200; and still an-
other is that the court held it conclusively proved that Ko-
lonoski lived in Maple Grove at the time the mortgage was
executed. We cannot determine whether these and other
exceptions of like character are or are not well taken, with-
out reviewing the testimony, which, for reasons above
stated, we cannot do in the present condition of the record.

Counsel for defendants insisted on the argument that the
bill of exceptions does, in fact, contain all the testimony.
This court would have ordered the record returned to en-
able defendants to obtain, if they could, a certificate to that
effect, were it not that Judge MYERS, before whom the case
was tried, died after he had settled and signed the bill of
exceptions. Hence the defect is remediless, and defendants
are compelled to rest their case on the bill of exceptions as
it now is. This may be unfortunate for them, but this court
is powerless to relieve them.

*By the Court.*— The judgment of the circuit court is af-
firmed.