ESTATE OF DEMOS: DEMOS, Appellant, v. CAREY and another, Executors, Respondents.*

*No. 67. Argued February 2, 1971.—Decided March 2, 1971.*
(Also reported in 184 N. W. 2d 117.)

* Motion for rehearing denied, with costs, on May 4, 1971.

For the appellant there was a brief by *Marvin Shovers* of Racine, and by *Baker, Juliani, Stanhope, Joling & Greco* of Kenosha, attorneys, and *Robert J. Joling* of counsel, and oral argument by *Robert J. Joling*.

For the respondents there was a brief by *Phillips, Richards & Mayew* of Kenosha, and oral argument by *Charles J. Richards.*

HANLEY, J.   The sole issue presented on this appeal is whether the trial court properly dismissed items 1, 3 and 4 of the appellant's claim upon the ground that same is unenforceable by application of the statute of limitations.

The opinion of the trial court simply states that the claims are barred by "the" statute of limitations. No reference is made to any specific section of ch. 893 (limitations) in the court's decision. However, since the appellant is suing on three simple debts which purport to be evidenced in writing, the section normally applicable would be the six-year provision found in sec. 893.19 (3), Stats., which provides:

"An action upon any other contract, obligation or liability, express or implied, except those mentioned in ss. 893.16 and 893.18."

Appellant contends on appeal that his complaint alleges fraud and that therefore the applicable section should be sec. 893.19 (7), Stats.:

"An action for relief on the ground of fraud. The cause of action in such case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud."

This argument requires this court to determine whether or not the complaint alleges fraud. The allegations are briefly summarized as follows:

On three separate occasions in 1938, the decedent executed written instruments which appear to have created a debtor-creditor relationship between the claimant and his deceased brother. From 1938, until his brother's death in 1966, the claimant frequently made demands of his brother for an accounting. The decedent continually put off the claimant by assuring him that an accounting would be forthcoming very soon. Relying on these promises and on certain unspecified "inducements," the claimant forebore from suit for about twenty-seven years, presuming that the long-awaited accounting was imminent. The complaint further alleges that appellant should not be found guilty of laches or lack of diligence in pursuing these claims because the relationship between him and his brother was "unique and confidential" and "was like unto master and servant."

The complaint goes on in almost narrative form to portray the claimant as a naive and guileless individual with no business acumen, who was awed by his brother's aggressiveness and flair for success in financial matters. Consequently, the claimant would unhesitatingly deliver moneys to his brother for use according to the latter's discretion.

At the same time though, and somewhat inconsistently, the complaint reveals that the claimant was an active participant in the numerous ventures and complex financial affairs of the two brothers. In fact, the claimant was vice-president of the corporation which formed the core of their mutual enterprises. In addition, the com-

plaint also discloses that the claimant had substantial business interests of his own, separate and apart from those in which he and the decedent shared a mutual interest.

Finally, it is alleged that the decedent was about to acquire yet another corporation just prior to his death and that he had promised the claimant a substantial interest in that corporation as partial compensation for past debts owed to the claimant. The death of Nicholas Demos prevented the consummation of this latest venture, and hence the long-promised accounting was never had. Nowhere in the complaint is fraud specifically alleged, nor does the complaint state facts, even when viewed most favorably to the claimant, from which fraud can reasonably be inferred.

In *First Credit Corp. v. Myricks* (1968), 41 Wis. 2d 146, 163 N. W. 2d 1, the elements of fraud were set forth, at page 149:

"The elements of fraud are stated in *International Milling Co. v. Priem* (1923), 179 Wis. 622, 624, 192 N. W. 68, as follows:

" 'To be actionable the false representation must consist, first, of a statement of fact which is untrue; second, that it was made with intent to defraud and for the purpose of inducing the other party to act upon it; third, that he did in fact rely on it and was induced thereby to act, to his injury or damage.' *See also Larson v. Splett* (1954), 267 Wis. 473, 475, 66 N. W. 2d 181; *Household Finance Corp., supra,* at page 55."

We think the complaint in this case does not sufficiently allege the requisite elements for a cause of action based on fraud and consequently sec. 893.19 (7), Stats., is not applicable to this case.

Appellant's next contention is that his cause of action is still viable (and not barred by the six-year statute governing simple debts) under sec. 893.25, Stats.:

"In actions brought to recover the balance due upon a mutual and open account current the cause of action

shall be deemed to have accrued at the time of the last item proved in such account."

Appellant argues that all five of the debts alleged in the complaint should be viewed as the separate parts of an integrated whole; and, when so viewed, they constitute an open account within the meaning of sec. 893.25, Stats. The last item in the account being dated 1966, appellant concludes that the starting point for the running of the six-year statute would be 1966, instead of 1938.

The first difficulty with the proposition that all five items are a part of a single, continuous and running account is that the time gap between the fourth and fifth entries is twenty-eight years. We doubt that sec. 893.25, Stats., was ever meant to apply to an account which lies dormant for that period of time, even presuming that the parties considered the account to be a single and continuous one. The statute refers to "open account current." Secondly, sec. 893.25 requires some showing that the element of mutuality contained therein has been satisfied. This requirement was discussed in *Estate of Vicen* (1957), 1 Wis. 2d 193, 197, 198, 83 N. W. 2d 664:

"A mutual account arises where there are mutual dealings, and the account is allowed to run with a view of an ultimate adjustment by a settlement and payment of the balance. 1 Am. Jur., Accounts and Accounting, p. 266, sec. 4. Mutual accounts are made up of matters of setoff. There must be a mutual credit founded on an express or implied agreement for a setoff of mutual debts. Ibid. A mutual and open account current is an account wherein are set down by express or implied agreement by the parties concerned a connected series of debit and credit entries of reciprocal charges and allowances, where the parties intend that the individual items of the account shall not be considered independently, but as a continuation of a related series, and that the account shall be kept open and subject to a shifting

balance as additional related entries of debits and credits are made thereto, until it shall suit the convenience of either party to settle and close the account; . . ."

The complaint herein states no facts from which this court could infer that the mutuality requirement, as interpreted in *Vicen, supra,* has been satisfied. There is no allegation of debits and credits, no allegation of any setoffs and no allegation of a shifting balance. We conclude that the claim here made is not to recover the balance due upon a mutual and open account current within the meaning of sec. 893.25, Stats.

The appellant offers one further theory on why he should be excused from failing to bring his action within the time required in sec. 893.19 (3), Stats. (six years). He contends that the facts alleged, if proved, would give rise to a constructive trust. This theory presents two questions:

(1) Presuming the allegations to be true, do they make out a case for the doctrine of constructive trust; and

(2) Even if appellant has made sufficient allegations for the invocation of a constructive trust, is not the concept of limitations still applicable thereto?

This court has never authored a definitive statement on what elements will suffice to give rise to a constructive trust. At one time, *Will of Jaeger* (1935), 218 Wis. 1, 13, 259 N. W. 842, declared that the rule in this jurisdiction was that a constructive trust did not arise unless fraud, actual or constructive, could be established. However, in *Estate of Massouras* (1962), 16 Wis. 2d 304, 312, 114 N. W. 2d 449, this court relaxed the requirement of *Jaeger, supra,* stating that:

". . . Such a trust is implied by operation of law as a remedial device for the protection of a beneficial interest against one who either by actual or constructive fraud, duress, abuse of confidence, mistake, commission of a wrong, or by any form of unconscionable conduct,

has either obtained or holds the legal title to property which he ought not in equity and in good conscience beneficially enjoy. . . ."

The first claim is predicated upon a written agreement; the third claim is predicated upon a note; and the fourth claim is based upon an unpaid check. It is well established that:

". . . A constructive trust does not arise out of a breach of a written contract, and the mere failure to perform an agreement or to carry out a promise cannot in itself give rise to a constructive trust, . . ." 89 C. J. S., *Trusts,* p. 1028, sec. 142.

We think the instant complaint does not state facts sufficient to justify the imposition of a constructive trust. Even if the complaint was sufficient in its allegations, the action would still be barred by sec. 893.18 (4), Stats.

It is well established that provisions limiting the time in which an action may be brought are applicable to suits seeking equitable as well as legal remedies. Angell, *On Limitations* (6th ed.), ch. 3, p. 23, sec. 26. In this case, presuming the appellant has made out a constructive trust, then his action is one which would formerly have been cognizable in the courts of chancery. Therefore, his action would be governed and barred by sec. 893.18 (4), Stats., which provides as follows:

"Within 10 years. . . .
"(4) An action which, on and before February 28, 1857, was cognizable by the court of chancery, when no other limitation is prescribed in this chapter."

We conclude that the facts alleged, and examined in the light most favorable to the appellant, do not state a cause of action for constructive trust. The appellant's action is simply based on debt and is barred by sec. 893.19 (3), Stats.

*By the Court.*—Order affirmed.